**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

---

OLTON LEE DUMAS,

Plaintiff,

v.

SHERYL RAMSTAD HVASS, ET AL.,

Defendants.

Civil No. 01-1436 DSD/AJB

**REPORT & RECOMMENDATION**

---

## I. INTRODUCTION

Prairie Correctional Facility (PCF) is owned and operated by Corrections Corporation of America (CCA). PCF maintains a prison industry program in conjunction with Jacobs Trading Company (Jacobs Trading). While housed at PCF, Plaintiff participated in the inmate work program and was employed by Jacobs Trading. Plaintiff has brought a four-count Amended Complaint, making several allegations including discriminatory and retaliatory treatment, and denial of due process, in connection with his employment at Jacobs Trading. Plaintiff has named as defendants CCA, PCF, Jacobs Trading and several individual employees of those organizations (hereafter, collectively referred to as Defendants).[1]

Now before the Court is Defendants' motion to dismiss or in the alternative, for summary judgment. The matter is properly before the undersigned United States Magistrate Judge for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. For reasons discussed below, it is recommended that Defendants' motion be granted.

## II. BACKGROUND

[1]Plaintiff has also named as a defendant Sheryl Ramstad Hvass (Hvass), the Commissioner of the Minnesota Department of Corrections. Hvass's motion to dismiss or in the alternative, for summary judgment, has been addressed separately by the Court.

AUG 0 9 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD____
DEPUTY CLERK____

Plaintiff and Defendants do not agree on the facts in this case. Because this case is before the Court on Defendants' motion to dismiss or in the alternative, for summary judgment, the Court relies on Plaintiff's version for purposes of setting out the background.

Prairie Correctional Facility (PCF), located in Appleton, Minnesota, is a private prison owned and operated by Corrections Corporation of America (CCA), a private prison services contractor. Amended Complaint (Comp.) at ¶ 1. PCF maintains a prison industry program in conjunction with Jacobs Trading Company (Jacobs Trading), a private organization. Id. at ¶¶ 12-13, 34. Plaintiff is an African-American prisoner, who was housed at PCF until about June 11, 2002. Id. at ¶ 1; Docket No. 52. While housed at PCF, Plaintiff participated in the inmate work program and was employed by Jacobs Trading. Comp. at ¶¶ 1, 12, 34.

Plaintiff began his employment with Jacobs Trading on February 12, 2001. Id. at ¶ 12. On March 2, 2001, he was suspended for three days for losing a putty knife. Id. at ¶ 51. Plaintiff contends that the PCF industry rules did not provide for any sanction for losing a putty knife. Id. After his March 2, 2001 suspension, Plaintiff asked supervisors for a grievance form on several occasions, but on each occasion, he was told that they could not locate such a form. Id. at ¶¶ 52, 53.

On April 2, 2001, Plaintiff complained to Chris Andrews (Andrews), his shift supervisor, that Andrews was granting job assignments based upon a personal relationship between Andrews and another inmate. Id. at ¶¶ 55, 56. Plaintiff told Andrews that the manner in which she assigned jobs was "bullshit." Id. at ¶ 58. The following day, Plaintiff was suspended for three days for talking back to his supervisor. Id. at ¶¶ 62, 64. Plaintiff contends that the rule used to suspend him provided for only a warning for his conduct. Id. at ¶ 78.

After being suspended on April 3, 2001, Plaintiff spoke with Ms. L. Stone (Stone), the Programs Coordinator for the prison industry program at PCF. Id. at ¶¶ 7, 64. Plaintiff complained to Stone regarding his April 3, 2001 suspension. Id. at ¶¶ 64-65. Plaintiff also complained to Stone regarding his inability, since March 3, 2001, to obtain an employment

grievance form. Id. at ¶ 66. Stone told Plaintiff that he could submit a grievance directly to her. Id. at ¶ 69. Thereafter, on April 10, 2001, Plaintiff submitted a grievance to Stone regarding employment discrimination, the lack of an employment grievance process and disciplinary procedure. Id. at ¶¶ 70-71. Apparently in response to Plaintiff's complaints regarding a lack of disciplinary procedure, Stone drafted a disciplinary chart. Id. at ¶ 77.

On April 10, 2001, Plaintiff and every member of his shift were denied the use of the restroom, except during breaks and lunch. Id. at ¶ 79. Plaintiff contends that Sergeant Streff (Streff), a security supervisor, made the decision to deny the use of the restroom. Id. at ¶¶ 10, 79. The next day, Plaintiff submitted a grievance to Stone. Id. at ¶ 83. On April 23, 2001, Stone spoke with Streff about Plaintiff's allegations regarding the use of the restroom. Id. at ¶ 88. On the same day, upon reporting for work, Plaintiff received a written warning for misprocessing a box on April 16, 2001. Id. at ¶ 91. Plaintiff contends that there was no rule providing for a warning for a first-time incident of misprocessing a box. Id. at ¶ 92. At the end of his shift, Plaintiff was informed that he was terminated for having too many warnings. Id. at ¶ 94. Plaintiff contends that there was no rule providing for termination for having too many warnings. Id. at ¶ 96.

The next day (April 24, 2001), Plaintiff complained to Stone about his termination. Id. at ¶ 98. He pointed out that, when he was terminated, he had only one warning and that the two suspensions were pending a grievance process. Id. Thereafter, Plaintiff was informed by Stone that his prior grievances were being treated as informal, and that he should commence his grievances pursuant to established policy. Id. at ¶ 100. Plaintiff did so. Id. at ¶¶ 101, 103.

On May 9, 2001, Plaintiff received a hearing before a review committee. Id. at ¶¶ 107-09. At the hearing, the committee informed Plaintiff that he was terminated pursuant to a rule that provided for termination following too many warnings or following two suspensions within four months. Id. at ¶ 109. Plaintiff contends that there was no rule as cited by the review committee. Id. at ¶ 110. Plaintiff contends that the only rule, that arguably met the terms cited

by the review committee, was found in the disciplinary chart (mentioned above). Id. at 77, 112. Plaintiff contends that, at the time of the hearing, the disciplinary chart was in rough-draft form and therefore, could not constitute grounds for upholding his termination. Id. at ¶¶ 77, 113-14. In any event, Plaintiff points out that his two suspensions occurred on March 2 and April 3, 2001, but the disciplinary chart was not drafted until April 7, 2001. Id. at ¶ 115.

Plaintiff appealed the committee's decision to Tim O'Dell, PCF's Warden, and that appeal was denied. Id. at ¶¶ 117-19. On or about May 22, 2001, Plaintiff complained to Mr. J. Berger, the Programs Manager of PCF, alleging discriminatory retaliation in connection with his termination. Id. at ¶¶ 6, 120. On May 24, 2001, there was another hearing held, in which Mr. Berger participated. Id. at ¶ 122. Plaintiff's termination was overturned. Id. at ¶¶ 122-23.

After some delay, Plaintiff was allowed to return to work on June 8, 2001. Id. at ¶¶ 123, 146-51, 154, 157-59. Upon returning to work, however, Plaintiff was assigned to work in a different work area (batteries and cosmetics), which he considered a significant demotion. Id. at ¶¶ 159-61. In addition, he was assigned to work in that area alone, requiring him to lift boxes that were too heavy for one person to lift. Id. at ¶ 185. As a result, he suffered an injury. Id.

Plaintiff makes several other allegations. He contends that, on three occasions in June 2001, African-American workers were denied the same opportunity to work as White workers. Id. at ¶¶ 165-67. He also contends that there was a White inmate who (1) was assigned to Jacobs Trading, (2) was terminated for rule violations, and (3) was reinstated without commencing a proper grievance or appearing before a review committee. Id. at ¶ 134. Plaintiff also contends that on April 23, 2001, Jacobs Trading personnel performed an employee evaluation, wherein they made false and defamatory statements. Id. at ¶ 209. He further contends that a White inmate received a better employment evaluation, even though the White inmate had been previously terminated and Plaintiff had not. Id. at ¶ 211.

In his Amended Complaint, Plaintiff contends that several federal statutory, and constitutional, provisions have been violated, including 42 U.S.C. §§ 1981-1983; Title VII of the

Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. §§ 1985 & 1986; and the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. Plaintiff has also alleged two state-law claims of defamation and intentional infliction of emotional distress.

## III. DISCUSSION

### A. STANDARD OF REVIEW

In considering a motion to dismiss, the Court must accept all facts alleged in the complaint as true. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). A complaint should not be dismissed unless the Court concludes that the plaintiff cannot prove any set of facts that would entitle the plaintiff to relief. Id. If the Court considers matters outside the pleadings, the Court must convert the motion to dismiss into one for summary judgment. FED. R. CIV. P. 12(b).

Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Enter. Bank v. Magna Bank of Missouri, 92 F.3d 743, 747 (8th Cir. 1996). Upon motion for summary judgment, courts view the evidence, and any inferences which may be reasonably drawn therefrom, in the light most favorable to the nonmoving party. Id. The moving party has the burden to demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. Then, the nonmoving party must demonstrate, on the record, the existence of specific facts which create a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### B. ANALYSIS

#### 1. Title VII

Defendants argue that Plaintiff's Title VII claim must be dismissed because he failed to exhaust his administrative remedies and/or because Plaintiff was not working under an employer/employee relationship for purposes of Title VII. The Court first addresses Defendants' second argument because, if Plaintiff was not working under an employer/employee relationship for purposes of Title VII, Defendant's exhaustion argument becomes moot.

Defendants cite McMaster v. State of Minnesota, 30 F.3d 976 (8th Cir. 1994) for the notion that Plaintiff was not working under an employer/employee relationship for purposes of Title VII. The Court has reviewed McMaster and finds it readily distinguishable from the facts here. In McMaster, the Eighth Circuit held that "inmates . . . who are required to work as part of their sentences and perform labor within a correctional facility as part of a state-run prison industries program are not 'employees' of the state or prison within the meaning of the Fair Labor Standards Act." Id. at 980. Here, Plaintiff *voluntarily* worked for a *private* organization. Comp. at ¶ 13, 34. Therefore, the Court cannot say that Plaintiff was not working under an employer/employee relationship for purposes of Title VII. See Moyo v. Gomez, 32 F.3d 1382, 1385 (9th Cir. 1994) ("Moyo may be able to state a retaliation claim . . . if the character of the work performed by the inmates in this case can reasonably be distinguished from the obligatory, on-site prison labor deemed outside of Title VII's protection by the EEOC").

As for Defendants' first argument, the court agrees with Defendants that Plaintiff has failed to exhaust his administrative remedies. "[I]n order to initiate a claim under Title VII a party must timely file a charge of discrimination with the EEOC and receive a right-to-sue letter." Stuart v. General Motors Corp., 217 F.3d 621, 630 (8th Cir. 2000).

Here, there is no dispute that Plaintiff did not receive a right-to-sue letter. Given these facts, the Court concludes that Plaintiff's Title VII claim should be dismissed.

2. 42 U.S.C. § 1981

42 U.S.C. § 1981, like Title VII, "affords a federal remedy against discrimination in private employment on the basis of race." Johnson v. Ry. Express Agency, 421 U.S. 454, 459-

60, 95 S.Ct. 1716, 1719-20, 44 L.Ed.2d 295 (1975). Here, in addition to alleging a violation of Title VII, Plaintiff alleges that Defendants violated § 1981. Defendants argue, however, that Plaintiff failed to plead facts sufficient to support a § 1981 claim. The Court agrees. The Plaintiff, while offering numerous conclusory allegations, does not provide the court with any evidence upon which the court could conclude that he was similarly situated to a White inmate and was treated more harshly.

In his amended complaint, Plaintiff alleges specific disciplinary actions that were taken against him. He contends that those actions were not consistent with the prison industry rules. There are no facts Plaintiff offers which would lead to the conclusion that Plaintiff was being treated differently because of his race. In the Court's view, Plaintiff's Amended Complaint fails to set forth sufficient allegations to support a § 1981 claim and concludes that Plaintiff's §1981 claim should be dismissed.

3. 42 U.S.C. § 1982

In the caption for Count I, Plaintiff indicates that he is bringing a cause of action under 42 U.S.C. § 1982. The Amended Complaint, however, alleges no facts that implicate that statute. That statute does not apply to employment discrimination claims. Evans v. Meadows Steel Products, Inc., 572 F.Supp. 250, 253 (N.D. Ga. 1983); Johnson v. Duval County Teachers Credit Union, 507 F.Supp. 307, 310 (M.D. Fla. 1980). Therefore, Plaintiff's Amended Complaint should be dismissed, to the extent that it alleges a cause of action under 42 U.S.C. § 1982.

4. 42 U.S.C. § 1983

a. *Equal Protection*

Plaintiff brings an Equal Protection claim. Defendants contend that Plaintiff failed to allege facts supporting such a claim. The Court agrees. To establish an Equal Protection claim, Plaintiff must allege facts demonstrating that he was treated differently from similarly situated White inmates. Driver v. Groose, 273 F.3d 811, 812 (8th Cir. 2001). As the Court discussed

above when addressing Plaintiff's § 1981 claim, Plaintiff's complaint fails to sufficiently allege such facts. The Court concludes that Plaintiff's § 1981 claim should be dismissed.

b. *Due Process*

Plaintiff claims that his Due Process rights were violated because he was not provided any process before he was subjected to workplace sanctions (suspensions, termination, etc.). Defendants argue that Plaintiff's Due Process claim fails because, *inter alia*, Plaintiff did not possess a liberty or property interest in his employment at Jacobs Trading. The Court agrees. "Whatever liberty or property interests inhere in prison employment are the product of state law." Lyon v. Farrier, 727 F.2d 766, 769 (8th Cir. 1984) (citing Peck v. Hoff, 660 F.2d 371, 373 (8th Cir.1981)). "To create such interests, state law must use 'language of an unmistakably mandatory character . . . .'" Id. (quoting Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). Here, Plaintiff has not presented–nor has the Court ascertained–a single state law or regulation that provided Plaintiff with a liberty or property interest in his employment at Jacobs Trading. Accordingly, Plaintiff's Due Process claim should be dismissed.

c. *First Amendment*

Plaintiff contends that his First Amendment, freedom-of-speech, rights were violated. Defendants contend that Plaintiff failed to allege facts to support such a claim. The Court agrees.

Plaintiff claims that his First Amendment rights were violated because he was denied an adequate grievance process to voice his opinion regarding his working conditions. This claim must fail. There is no inherent constitutional right to a grievance process. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).

Plaintiff, further claims that his First Amendment rights were violated because he suffered retaliatory treatment for voicing his opinion regarding his working conditions. Plaintiff however does not dispute that he talked back to his supervisor, and does dispute that he received a warning for not processing a box properly. Plaintiff does not allege that he received that warning because of his race. Comp.at ¶ ¶ 91,92. His complaint again fails to set forth

sufficient facts to support his claim that his First Amendment, freedom-of-speech rights were violated.

d. *Eighth Amendment*

Plaintiff makes reference to the an Eighth Amendment in Count III of his amended complaint. Defendants correctly contend that, in order to state a constitutional violation under the Eighth Amendment, Plaintiff must establish that he is incarcerated under conditions posing a substantial risk of serious harm. Spruce v. Sargent, 149 F.3d 783, 785 (8th Cir. 1998). Plaintiff's complaint falls very short of alleging such conditions. The only allegation in the Amended Complaint that even warrants discussion here is his allegation that he was assigned to work alone and suffered an injury after lifting boxes that were too heavy for one person. Comp. at ¶ 185. Perhaps, if the at-issue work was required as part of his sentence (i.e., "forced" labor), he may have at least an arguable Eighth Amendment complaint. But, Plaintiff's employment was voluntary. Id. at ¶ 34. Accordingly, Plaintiff's Eighth Amendment claim should be dismissed.

5. 42 U.S.C. § 1985 & 1986

Plaintiff alleges a conspiracy claim under both 42 U.S.C. § 1985 and § 1986. The Amended Complaint alleges that several Defendants, along with security officer Morris (who is not a party to this suit), conspired to terminate Plaintiff's employment at Jacobs Trading, by using the April 7, 2001 disciplinary chart (the document allegedly drafted by Stone) to uphold his termination from Jacobs Trading. Defendants argue that Plaintiff has failed to allege facts that, if proven true, might demonstrate a conspiracy. The Court agrees.

To adequately state a claim of conspiracy under 42 U.S.C. § 1985, it is not enough to baldly allege that a conspiracy has taken place. Laurales v. Desha County Sch. Dist. #4 of Snowlake, 632 F.2d 72, 74 n.3 (8th Cir. 1980). Here, Plaintiff makes only conclusory allegations of a conspiracy. He has alleged no facts that, if proven true, would even constitute circumstantial evidence of a conspiracy as contemplated by 42 U.S.C. § 1985. Accordingly, Plaintiff's claim under 42 U.S.C. § 1985 should be dismissed. In addition, his claim under 42 U.S.C. § 1986 must

also be dismissed because recovery under 42 U.S.C. § 1986 is dependent on the existence of a claim under 42 U.S.C. § 1985. Weseman v. Meeker County, 659 F.Supp 1571, 1575 (D. Minn. 1987).

6. Intentional Infliction of Emotional Distress

Plaintiff alleges a claim of intentional infliction of emotional distress. Defendants argue that Plaintiff failed to allege facts that would support such a claim. The Court agrees. To state a claim under Minnesota law for intentional infliction of emotional distress, a plaintiff must allege facts which demonstrate, *inter alia*, extreme and outrageous conduct utterly intolerable in a civilized society. Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-40 (Minn. 1983). It is for the Court to determine, in the first instance, whether the alleged conduct may be reasonably regarded as so extreme as to permit recovery. Jeffers v. Convoy Co., 636 F.Supp. 1337, 1343 (D. Minn. 1986). After reviewing the Amended Complaint, the Court concludes that Plaintiff has not alleged facts, which demonstrate he was subjected to extreme and outrageous conduct. Accordingly, Plaintiff's claim of intentional infliction of emotional distress should be dismissed.

7. Defamation

Plaintiff alleges a claim of defamation. He contends that on April 23, 2001, Jacobs Trading personnel performed an employee evaluation, wherein they made false and defamatory statements. Comp. at ¶ 209. Defendants contend that Plaintiff has failed to sufficiently plead a claim for defamation. The Court agrees. Although it is not necessary, when pleading a claim for defamation, to recite the defamatory statement verbatim, the claim must be pled with some specificity. Ferguson v. Michael Foods, Inc., 74 F.Supp.2d 862, 872 (D. Minn. 1999). The plaintiff must identify who made the defamatory statement and what was said. Id. Here, Plaintiff's Amended Complaint does not sufficiently identify the allegedly false statements upon which he bases his claim of defamation. Plaintiff's allegations in this regard are too vague and conclusory. Accordingly, Plaintiff's defamation claim should be dismissed.

8. Damages

In support of their motion, Defendants contend that Plaintiff has no recoverable damages, and that this forms an independent basis for dismissal. Because of the decision on defendants other motions, this argument is moot.

## IV. RECOMMENDATION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that

1. Defendants' motion be granted [Docket No. 18];
2. That Plaintiff's claims be dismissed with prejudice.

Dated August 9 2002

Arthur J. Boylan
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of the Court and serving all parties, within ten days after being served with a copy thereof, written objections which **specifically** identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to **ten pages**. A judge shall make a de novo determination of those portions to which objection is made.

AJB